UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x

THE NEW YORK TIMES COMPANY and
CAROL ROSENBERG,

                 Plaintiffs,

-against-

DEPARTMENT OF DEFENSE,

                 Defendant.

------------------------------------- X

MEMORANDUM DECISION
AND ORDER

19 Civ. 5779 (GBD)

GEORGE B. DANIELS, District Judge:

    Plaintiffs The New York Times Company and New York Times reporter Carol Rosenberg bring this action under the Freedom of Information Act ("FOIA") against the United States Department of Defense (the "Government" or "Defendant") seeking the disclosure of "the command and investigation report," which details the government's reasons for reprimanding and relieving Rear Admiral John Ring from his post as Commander of Joint Task Force Guantanamo Bay. The parties have cross-moved for summary judgment. Plaintiffs' motion is DENIED. Defendant's motion for summary judgment is GRANTED.

## I. FACTUAL BACKGROUND[1]

    This Freedom of Information Act case involves just one responsive record, the command investigation report of Rear Admiral John C. Ring (the "Ring Report").

    In April 2018, Rear Admiral Ring assumed command of Joint Task Force Guantanamo Bay ("JTF-GTMO"). (Pls.' Opp'n and Cross-Mot. for Summ. J., ("Pls.'s Opp'n"), ECF No. 46 at

---

[1] In keeping with the standard practice in FOIA cases in this Circuit, the parties did not submit Rule 56.1 statements. *See New York Times Co. v. U.S. Dep't of Justice*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012). Therefore, the facts laid out here are drawn from the parties' submissions, including affidavits and exhibits.

1

2.)  Approximately one year later, Rear Admiral Ring was relieved of his command.  (*Id.* at 3.) On May 1, 2019, Plaintiffs, who had previously reported on United States Southern Command and JTF-GTMO, submitted a FOIA request seeking "a copy of the command investigation report of Rear Adm. John C. Ring." (*See* Compl., ECF No. 1, ¶ 9; Answer, ECF No. 11, ¶ 9.)  The Ring Report is the written record of an "investigation into various allegations of misconduct committed by Rear Admiral John C. Ring, Commander JTF-GTMO," which was conducted by United States Southern Command.  (Declaration of Michael Droz dated October 21, 2020 ("Droz Decl."), ECF No. 42, ¶ 6.)  The Ring Report compiles statements and evidence from witnesses with knowledge of Rear Admiral Ring's potential misconduct. The investigating officer (whose factual findings, opinions, and recommendations are included in the Ring Report) was Rear Admiral Sean S. Buck. (Droz Decl. ¶ 11.)  The final decisionmaker (who made the final determinations on the investigation) was Admiral Craig S. Faller, Commander United States Southern Command.  (*Id.*) The Ring Report concluded, among other things, that Rear Admiral Ring "prioritized mission accomplishment at the inadvertent expense of protecting national security information during his command of JTF-GTMO." (Ring Report, ECF Nos. 40-1, 40-2 at SC 005.)  Thus, the Ring Report recommends that Rear Admiral Ring be relieved of his command.  (*Id.* at 109–110.)

On September 13, 2019, the Department of Defense produced a redacted copy of the Ring Report to Plaintiffs.  (Declaration of Anthony J. Sun dated October 20, 2020 ("Sun Decl."), ECF No. 40, ¶ 3.)  After discussion between the parties, the Department of Defense re-processed the Ring Report and removed some redactions that had been previously applied. *Id.* The Department of Defense has redacted information in the Ring Report pursuant to FOIA Exemptions 1, 3, 5, 6, and 7.  There is no dispute between the parties that the Government has performed an adequate search of its records; however, Plaintiffs do contend that the Government has failed to provide

adequate justification for the remaining redactions in the Ring Report. Plaintiffs ask this Court to undertake a full *in camera* review of the Ring report or order the Government to provide additional public details to support their redactions. (Pls.' Opp'n at 2.)

## II. LEGAL STANDARD

### A. The Freedom of Information Act and Summary Judgment

FOIA requires "broad disclosure of Government records." *CIA v. Sims*, 471 U.S. 159, 166 (1985). When requested, the Government must disclose any document that does not fall within one of FOIA's nine exemptions. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001). "An agency withholding documents responsive to a FOIA request bears the burden of proving the applicability of claimed exemptions." *ACLU v. Dep't of Justice*, 681 F.3d 61, 69 (2d Cir.2012). "Affidavits or declarations . . . giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden." *Id.* at 69 (quoting *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994)). "In the national security context, . . . [a court] must accord *substantial weight* to an agency's affidavit concerning the details of the classified status of the disputed record." *ACLU*, 681 F.3d at 69 (quoting *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007)) (emphasis in original).

"FOIA cases are generally and most appropriately resolved on motions for summary judgment." *Families for Freedom v. U.S. Customs & Border Prot.*, 797 F. Supp. 2d 375, 385 (S.D.N.Y. 2011). Summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

A district court considering a FOIA claim "may grant summary judgment in favor of an agency 'on the basis of agency affidavits if they contain *reasonable specificity* of detail rather than

merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.'" *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (quoting *Gallant v. NLRB*, 26 F.3d 168, 171 (D.C. Cir. 1994)); *see also Garcia v. U.S. Dep't of Justice, Office of Info. & Privacy*, 181 F.Supp.2d 356, 366 (S.D.N.Y. 2002) ("If the agency's submissions are facially adequate, summary judgment is warranted unless the plaintiff can make a showing of bad faith on the part of the agency or present evidence that the exemptions claimed by the agency should not apply."). Thus, "if the agency's submissions are adequate on their face . . . the district court may forgo discovery and award summary judgment on the basis of affidavits." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) (internal quotations omitted). On the other hand, "[s]ummary judgment in favor of the FOIA plaintiff is appropriate when an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption." *Nat. Res. Def. Council, Inc. v. U.S. Dep't of Interior*, 36 F.Supp.3d 384, 398 (S.D.N.Y. 2014) (quoting *N.Y. Times Co. v. U.S. Dep't of Def.*, 499 F.Supp.2d 501, 509 (S.D.N.Y. 2007)).

## III. THE DEPARTMENT OF DEFENSE PROPERLY WITHHELD CLASSIFIED PORTIONS OF THE RING REPORT

The Government invokes five FOIA exemptions that are challenged by the Plaintiffs: (i) FOIA Exemption 1, which covers records that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" if the records "are in fact properly classified" as such, 5 U.S.C. § 552(b)(1); (ii) FOIA Exemption 3, which covers material "specifically exempted disclosure by statute," *id.* § 552(b)(3); (iii) FOIA Exemption 5, covering "inter-agency or intra-agency memorandums or letter which would not be available by law to a party . . . in litigation with the agency," *id.* § 552(b)(5); (iv) FOIA Exemption 6, covering the disclosure of personnel, medical, or similar files, "the disclosure

4

of which would constitute a clearly unwarranted invasion of personal privacy," *id.* § 552(b)(6); and (v) FOIA Exemption 7, covering "records or information compiled for law enforcement purposes," *id.* § 552 (b)(7).

## A. FOIA Exemption 1

FOIA Exemption 1 shields from disclosure documents that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Under Executive Order 13,526, information may be categorized as "classified" if (i) "an original classification authority is classifying the information"; (ii) "the information is owned by, produced by or for, or is under the control of the United States Government"; (iii) "the information falls within one or more of" eight categories enumerated in section 1.4 of the Executive Order, including "intelligence sources or methods"; and (iv) "the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage." 75 Fed. Reg. 707 (Dec. 29, 2009).

The Government invoked Exemption 1 in redacting certain portions of the Ring Report and avers that the withheld information falls into sections 1.4(a) and (c) of the Executive Order. (Droz Decl. ¶ 5.) Section 1.4(a) covers military plans, weapons systems, or operations. 75 Fed. Reg. 707. Section 1.4(c) relates to intelligence activities (including covert action), intelligence sources or methods, or cryptology. *Id.* The Plaintiffs challenge the Government's redactions and argue that the exemption has been "over-applied." (Pls.' Opp'n at 6–12.) For example, Plaintiffs claim that the Government is applying Exemption 1 to withhold information about a "drug deal"

mentioned in the Ring Report and that such a deal has "no apparent connection to 'military plans, weapons systems, or operations.'" (*Id.* at 7.)

While Plaintiffs' argument is facially intriguing, the Government's explanations, provided in both public and classified declarations, are reasonably "detailed and specific" and support the determination that the information has been properly withheld. *ACLU v. U.S. Dep't of Justice*, 265 F. Supp. 2d 20, 27 (D.D.C. 2003). The Droz Declaration explains that the redacted information pertains to "certain aspects of detention operations (namely physical security) at Guantanamo Bay" and information related to "intelligence personnel and methods." (Droz. Decl. ¶ 7.) Mr. Droz further explains that "the public disclosure of [the redacted] information could harm national security by enabling transnational terrorists to circumvent security and/or intelligence methods employed in detention camps." (*Id.*) Specifically, revelation of the redacted material would show "vulnerabilities that bad actors could exploit, including the detainees at Guantanamo Bay, that would undermine the very nature of those operations." (*Id.*) Moreover, the Supplemental Droz Declaration explains that the "drug deal" referred to in the Ring Report is a military slag term connoting "the acquisition of materiel in a roundabout or unofficial manner," rather than a reference to illegal or illicit activity by a servicemember. (Supplemental Droz Declaration dated November 30, 2020 ("Supp. Droz Decl."), ¶3.) Thus, this phrase is related to "military plans, weapons systems, or operations" within the meaning of Section 1.4(a) of the Executive Order.

After considering the public Droz declarations and reviewing the classified submissions *in camera*, this Court finds that Exemption 1 applies to the withheld information. While still exercising its independent judgment, this Court recognizes that the "executive branch departments responsible for national security and national defense have unique insights and special expertise

6

concerning the kind of disclosures that may be harmful." *ACLU*, 265 F. Supp. 2d at 27; see also *ACLU v. Dep't of Justice*, 681 F.3d 61, 70 (2d Cir. 2012)("[W]e have consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review.")(quoting *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice,* 331 F.3d 918, 927 (D.C. Cir. 2003).) Therefore, the Court credits the Government's predictions about the potential national security implications of releasing additional information to the public. *Id.*

Accordingly, the redacted information in the Ring Report is exempt from disclosure under Exemption 1.

## B. FOIA Exemption 3

Under Exemption 3, an agency may withhold material in response to a FOIA request if the material is "specifically exempted from disclosure by [a] statute" that either (i) "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue," or (ii) "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). In order for Exemption 3 to apply an agency must show that (i) "the statute invoked qualifies as an [E]xeption 3 withholding statute," and (ii) "the materials withheld fall within that statute's scope." *A. Michael's Piano, Inc. v. FTC*, 18 F.3d 138, 143 (2d Cir. 1994). In evaluating whether Exemption 3 applies, a court should "not closely scrutinize the contents of the withheld document; instead, [it should] determine only whether there is a relevant statute and whether the document falls within that statute." *ACLU v. F.B.I.*, 2015 WL 1566775, at *3 (S.D.N.Y. Mar. 31, 2015).

Here, the Government invokes 10 U.S.C. § 130b as the applicable qualifying statute. (Droz Decl. ¶ 9.) In relevant part, that statute authorizes the Secretary of Defense to, *inter alia*, withhold "from disclosure to the public personally identifying information regarding . . . any member of the

7

armed forces assigned to an overseas unit." 10 U.S.C. § 130b(a)(1). Personally identifying information is defined by the statute as "the person's name, rank, duty address, and official title and information regarding the person's pay." 10 U.S.C. § 130b(c)(1). And the term "overseas unit" is defined as "a unit that is located outside the United States and its territories." *Id.* §130b(c)(3). There is no dispute that 10 U.S.C. § 130b qualifies as a withholding statute under Exemption 3. *Connell v. United States S. Command*, 2020 WL 6287467, at *3 (D.D.C. Oct. 27, 2020).

Plaintiffs argue that the Government appears to have withheld information under Exemption 3 "beyond the relevant statutory authorization." (Pls.' Opp'n at 12.) For example:

- "I believe there is a high likelihood I will be retaliated against for this statement in light of the [redacted] way I have been treated." (Ring Report at SC 016.)

- "When [redacted] came back to the [redacted] I told him about the call" (*Id.* at SC 034.)

- "I have been in the government and military for [redacted] years . . . I am a reservist and was mobilized on [redacted] for a one year mobilization." (*Id.* at SC 062.)

Plaintiffs contend that the placement of these redactions indicates that information outside of those enumerated in 10 U.S.C § 130b is being withheld. Plaintiffs also argue that the redactions made to pages SC 105-107 of the Ring Report are overly broad. (Pls.' Opp'n 13.)

Mr. Droz attests that Plaintiffs' concerns about the redactions on pages SC 016 and 034 are misplaced because "the only material withheld in those instances pursuant to Exemption 3 were names and initials." (Supp. Droz Decl. ¶ 7.) As to the redactions identified on page SC 062, Mr. Droz states that the redacted information pertains to an "individual's years of service and mobilization date." (*Id.* ¶ 8.) While years of service and mobilization date are not specifically enumerated in 10 U.S.C. §130b, Defendants argue that the release of this information could facilitate the identification of a member of an overseas unit. (*Id.*) Length of service and

8

mobilization dates are particularly revelatory information, and it is not hard to fathom that an interested individual could use such information in conjunction with other public information to identify a particular servicemember.[2]

As to Plaintiffs' concerns regarding the over redaction of pages SC 105-107, the Supplemental Droz Declaration makes clear that those pages were withheld in their entirety because they "consist of a legal memorandum that discusses classified information and refers to specific personnel." (Supp. Droz Decl. ¶ 9.) Additionally, while Plaintiffs contend that those pages "are entirely redacted under Exemption 3" it is clear from the face of the document that the Government is also applying Exemptions 1, 5, 6, and 7 to those portions of the Ring Report. In short, Plaintiffs have provided no reason to doubt the detailed and specific statements provided in the Droz declarations. Indeed, "[t]he [Government] has stated as much detail publicly in this case as it reasonably could without revealing sensitive information, and presented further specifics *in*

---

[2] Even if the redactions on pages SC 016, 034, 062, and 105-107 are not appropriate under Exemption 3, the redactions were also made pursuant to Exemption 6, which allows for the withholding of personal information related to personnel, medical, or similar files. *Wood v. F.B.I.*, 432 F.3d 78, 82 (2d Cir. 2005). Exemption 6 "protect[s] individuals from injury and embarrassment that can result from the unnecessary disclosure of personal information." *U. S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599 (1982). A court must balance the public need for the information at issue against an individual's privacy interest. *Wood*, 432 F.3d at 86. Here, the interest in protecting personal information (service length and mobilization dates) outweighs any public interest present in this case. Indeed, Plaintiffs failed to explain, both in their briefing and at oral argument, how the information that they seek to have revealed in any way informs them about the reasons Admiral Ring was relieved of his command. *See U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (stating that the only relevant public interest in disclosure is the extent to which the "core purpose of FOIA" is served, which is the "public understanding *of the operations or activities of the government.*")(emphasis in original). For substantially the same reasons the Government's redactions are also appropriate under Exemption 7(C), which protects from disclosure "records or information compiled for law enforcement purposes . . . to the extent that production . . . could reasonably be expected to constitute and unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

*camera.* This is the proper way to satisfy FOIA Exemption 3." *Hayden v. NSA,* 608 F.2d 1381, 1390–91 (D.C. Cir. 1979).

Accordingly, the responsive records are exempt from disclosure under Exemption 3.

## C. FOIA Exemption 5

FOIA Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency . . . ." 5 U.S.C. § 552(b)(5). "Courts have interpreted Exemption 5 to encompass traditional common-law privileges against disclosure, including the work-product doctrine and . . . deliberative process and attorney-client privileges." *Nat'l Council of La Raza v. Dep't of Justice,* 411 F.3d 350, 356 (2d Cir. 2005). The Government has redacted nine pages of the Ring Report, in part or in whole, pursuant to Exemption 5 and asserts that the redacted material is protected by the deliberative process privilege or attorney-client privilege. (Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 39, at 10.) Plaintiffs challenge the Government's use of the deliberative process privilege and argue that the Government has failed to demonstrate a foreseeable harm that would follow from disclosure. (Pls.' Opp'n at 14.)

The deliberative process privilege protects documents that are: "(1) predecisional, *i.e.,* prepared in order to assist an agency decisionmaker in arriving at his decision, and (2) deliberative, *i.e.,* actually related to the process by which policies are formulated." *La Raza,* 411 F.3d at 356 (quoting *Grand Cent. P'ship,* 166 F.3d at 482) (internal quotation marks omitted). Thus, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency" fall under the deliberative process privilege. *Grand Cent. P'ship,* 166 F.3d at 482.

"To find that a document is predecisional, [a] court must be able 'to pinpoint an agency decision or policy to which the document contributed,' or was intended to contribute." *Heartland All. for Human Needs & Human Rights v. U.S. Dep't of Homeland Sec.*, 291 F.Supp.3d 69, 79 (D.D.C. 2018) (quoting *Senate of the Commonwealth of Puerto Rico v. DOJ*, 823 F.2d 574, 585 (D.C. Cir. 1987) ). Additionally, under the 2016 FOIA Amendments, "[a]n agency shall withhold information under this section only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b)." 5 U.S.C. § 552(a)(8)(A)(i). Thus, "[t]o satisfy the 'foreseeable harm' standard, an agency "must explain how a particular Exemption 5 withholding would harm the agency's deliberative process." *Nat. Res. Def. Council v. U.S. Env't Prot. Agency*, 2019 WL 3338266, at *1 (S.D.N.Y. July 25, 2019) (Furman, J.)(quoting *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 72, 78 (D.D.C. 2018).

The Supplemental Droz Declaration establishes that the information withheld was predecisional. Plaintiffs argue that the Government is withholding findings of fact that have been expressly endorsed by Admiral Faller, a final decisionmaker, thereby making these facts part of a final decision and subject to release. (Pls.' Opp'n at 14–15.) But the Supplemental Droz Declaration makes clear that the information redacted in the findings of fact is deliberative. (Supp. Droz Decl. ¶12.) The redaction in finding of fact 1 "describes the decision-making process regarding the handling of certain classified materials," which is the very subject of the investigation into Admiral Ring's conduct. (*Id.*) Similarly, the redactions in finding of fact 2 reflect an individual's subjective belief about the decision-making process. (*Id.*) Accordingly, the Court is able to "pinpoint [the] agency decision or policy to which the document contributed." *Heartland All. for Human Needs & Human Rights*, 291 F.Supp.3d at 79.[3]

---

[3] This analysis is equally applicable to Plaintiffs' arguments regarding the redacted recommendations on pages SC 109-110 of the Ring Report. Recommendation 1 was modified by Admiral Faller to read that

11

Likewise, the Court credits the Government's explanation that disclosure of this material would cause foreseeable harm to the Department of Defense's deliberative process. While Plaintiffs are correct that the Government must provide more than "boiler plate" statements that the effect of disclosure would have a chilling effect on the agency's decision-making process, the Government has met that burden here. *Nat. Res. Def. Council*, 2019 WL 3338266, at *1. The Supplemental Droz Declaration elucidates the potential harms disclosure could cause including, (i) witnesses being less likely to report and cooperate in investigations, (ii) the Government being hindered in its efforts to protect classified information if security concerns are not raised, (iii) the quality and integrity of investigations being compromised if witnesses, subjects, and investigators feel they cannot be fully candid, and perhaps most persuasive, (iv) foreign adversaries could potentially gain insight into the military's investigative process and gain information about military officers. (Supp. Droz Decl. ¶¶10–11).

Accordingly, the redacted information in the Ring Report is exempt from disclosure under Exemption 5.

### D. FOIA Exemption 7(E)

FOIA Exemption 7(E) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if

---

"[Admiral] Ring was relieved for loss of confidence on 29 April 2019." (Ring Report at SC 110.) This modification to recommendation 1 was not simply an addendum, rather the original non-final recommendation was reworded and then properly released to reflect the final decision of Admiral Faller. Similarly, Admiral Faller concluded that recommendation 5 was "outside the purview of SOUTHCOM" and referred to another military component. (Supp. Droz Decl. ¶¶ 13–14.) Thus, these recommendations are non-final and are properly withheld under Exemption 5 as part of the Government's deliberative process.

such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The parties do not dispute that the Ring Report is a record compiled for law enforcement purposes.

The Second Circuit has interpreted Exemption 7(E) to cover two categories of information: (i) "techniques and procedures for law enforcement investigations" and (ii) "guidelines" for law enforcement investigations, or how the agency allocates resources in planning future policy or conduct. *See Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.*, 626 F.3d 678, 682 (2d Cir. 2010). "Discussion of law enforcement techniques and procedures is categorically exempt from FOIA disclosure, 'without need for demonstration of harm.'" *Iraqi Refugee Assistance Project v. Dep't of Homeland Sec.*, 2017 WL 1155898, at *5 (S.D.N.Y. Mar. 27, 2017) (quoting *Allard K. Lowenstein*, 626 F.3d at 681).

The Government has invoked Exemption 7(E) to withhold "certain aspects of the physical security of the detention camps at Guantanamo Bay and certain information security processes at JTF-GTMO." (Supp. Droz Decl. ¶ 24.) The Government contends that the "release of this information would both enable circumvention of physical security measures at Guantanamo and consequentially result in the disclosure of classified information related to detention operations in a manner that would harm national security." (*Id.*) This information falls squarely within the purpose of Exemption 7(E). "Exemption 7(E) sets a relatively low bar for the agency to justify withholding" that the Supplemental Droz Declaration and classified declarations submitted for *in camera* review have sufficiently cleared. *Blackwell v. F.B.I.*, 646 F.3d 37, 42 (D.C. Cir. 2011); see also Mayer Brown LLP v. IRS, 562 F.3d 1190, 1194 (D.C. Cir. 2009) ("Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the IRS demonstrate logically how the release of the requested information might

create a risk of circumvention of the law.")(internal quotation marks and alterations omitted.) Thus, the Government has properly applied Exemption 7(E) to the Ring Report.

Because the Government has provided declarations that "contain *reasonable specificity* of detail," it is unnecessary for this Court to conduct a full in camera review of the Ring Report. *Grand Cent. P'ship*, 166 F.3d at 478; *see also Knight First Amend. Inst. at Columbia Univ. v. U.S. Dep't of Homeland Sec.*, 407 F. Supp. 3d 311, 333 (S.D.N.Y. 2019)("Courts should only conduct *in camera* review of undisclosed records as a last resort.")

## IV. CONCLUSION

Defendant's motion for summary judgment dismissing Plaintiffs' claims, (ECF No. 39), is GRANTED. Plaintiffs' cross-motion for summary judgment, (ECF No.46), is DENIED. The Clerk of Court is directed to close the motions and the case accordingly.

Dated: New York, New York
August 25, 2021

SO ORDERED.

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge